IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GRAND FORKS LODGING LIMITED | ) | |
| PARTNERSHIP, a South Dakota Limited | ) | |
| Partnership, | ) | |
| | ) | Case Nos. 2:11-cv-97 & 2:11-cv-98 |
| Defendant. | ) | |
| | ) | **AMENDED FINDINGS OF FACT,** |
| & | ) | **CONCLUSIONS OF LAW, AND** |
| | ) | **ORDER FOR DEFAULT JUDGMENT** |
| U.S. BANK NATIONAL ASSOCIATION, | ) | **AND JUDGMENT OF** |
| | ) | **FORECLOSURE** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GRAND FORKS SETTLE INN LIMITED | ) | |
| PARTNERSHIP, a South Dakota Limited | ) | |
| Partnership, | ) | |
| | ) | |
| Defendant. | ) | |

This matter having come before the Court upon the Complaint for Foreclosure (the

"**Complaint**") of U.S. Bank National Association, as Trustee, Successor-in-Interest to Bank of

America, N.A., as Trustee, Successor to Wells Fargo Bank, N.A., as Trustee, for the Registered

Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through

Certificates, Series 2005-C22 ("**Plaintiff**") and Plaintiff's Motion for Default Judgment and

Judgment of Foreclosure (the "**Motion**"), together with the evidence, oral and documentary,

submitted to this Court on the issues in this case, and it appearing that Grand Forks Lodging Limited

1

Partnership and Grand Forks Settle Inn Limited Partnership (collectively the "**Borrower**"), accepted service of a summons and the Complaint; that the Court has jurisdiction of the subject matter hereof and of all of the parties hereto; that due notice of the Motion has been given to all parties entitled thereto; and that the Court, being fully advised in the premises, now makes and finds the following:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. On November 4, 2011, Borrower was, and is until this present date, the owner of the following described real property (the "Real Property"):

The Property is located in Grand Forks County, North Dakota, and is legally described as follows:

2:11-cv-97 - The easterly ninety (90) feet of Lot 2, Block 2, Renewal Resubdivision No. 5, Grand Forks, North Dakota (Grand Forks County, ND); being approximately 90' by 300' or 27,000 square feet.

Common Address: GuestHouse Inn Grand Forks located at 710 1st Avenue North, Grand Forks, North Dakota 58203

2:11-cv-98 - Lot 2, Block 2, Airport 5th Resubdivision to the City of Grand Forks, North Dakota (Grand Forks County, ND)

Common Address: Settle Inn located at 1211 North 47th Street, Grand Forks, North Dakota 58203.

2. On November 4, 2011, Borrower was, and is until this present date, the owner of certain personal property (the "**Personal Property**," and together with the Real Property, the "**Mortgaged Property**"). The Personal Property is more particularly described as:

a. all leasehold estate, right, title and interest of Borrower in and to all written and oral leases, subleases, subtenancies, licenses, franchises, usufructs, occupancy agreements and other agreements affecting all or any portion of the Mortgaged Property or the use or occupancy thereof now or hereafter existing or entered into whether before or after any proceeding is instituted by or against Borrower under 11 U.S.C. § 101 et seq. as amended (the "Bankruptcy Code"), including, without limitation, extensions, renewals and subleases (all of the foregoing, individually, a "Lease" and collectively, "Leases"), and all rights and claims of any kind that Borrower may have

2

against any tenant under the Leases or in connection with the termination or rejection of the Leases in a bankruptcy or insolvency proceeding, and all right, title and interest of Borrower thereunder, including, without limitation, all cash income, rents (including room rents, revenues, accounts and receivables, derived from the occupancy of any guest room), rent equivalents, income, receivable issues, royalties, issues, revenues, receipts, insurance proceeds, profits, proceeds, and other benefits, accounts or security deposits, prepaid or advance rentals, and deposits or payments of similar nature which are hereby specifically assigned, transferred and set over to the lender; including, without limitation, accounts receivable, of, accruing to or derived from Leases, or now due and which may hereafter become due under or by virtue of the Leases, including, without limitation, expenses paid by tenants, charges for services rendered and any and all consideration of whatever form or nature received by Borrower or its agents or employees from any and all sources relating to the use, enjoyment, occupancy and operation of the Mortgaged Property as a hotel or otherwise including, without limitation, all revenues and credit card receipts collected from guest rooms, restaurants, bars, mini bars, meeting rooms, restaurants, banquet rooms and recreational facilities, all receivables (including without limitation credit card receivables), customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower or any operator or manager of the hotel or the commercial space located in the Mortgaged Property or acquired from others (including, without limitation, from the rental of any office space, retail space, exhibit or sales space of every kind, guest rooms or other space, halls, stores, and offices, and deposits securing reservations of such space, telephones, fax and data transmittal services, parking, guest services. health clubs, recreational facilities), license, lease, sublease and concession fees and rentals, membership fees, food and beverage wholesale and retail sales, service charges, vending machine sales and proceeds, if any, from business interruption or other loss of income insurance and also including, without limitation, all rents, royalties, issues, revenues, profits, proceeds, income and other benefits, including, without limitation, accounts receivable, of, accruing to or derived from such Leases and from the renting, leasing or bailment the Mortgaged Property and equipment, including, without limitation, any payments made by tenants under Leases in connection with the termination of any Lease and all oil, gas and other mineral rights, royalties and profits, whether paid or accruing before or after any proceeding is instituted by or against Borrower under the Bankruptcy Code (all of the foregoing, collectively, "Rents"), and all proceeds from the sale or other disposition of the leases and the right to receive and apply the Rents to the payment of the Secured Obligations (defined in the Mortgage) and all lease guaranties, letters of credit and any

other supporting obligation for any of the Leases (collectively, "Lease Guaranties") given by any guarantor in connection with any of the Leases, and all rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under Lease Guaranties;

b.     all the estate, interest, right, title, other claim or demand, both in law and in equity, including, without limitation, claims or demands with respect to the proceeds of and any unearned premiums on insurance policies in effect with respect to the Mortgaged Property, which Borrower now has or may hereafter acquire in the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Mortgaged Property, and any and all awards made for the taking by eminent domain, or by any proceeding of purchase in lieu thereof, of the whole or any part of the Mortgaged Property, including, without limitation, any awards resulting from a change of grade of streets and awards for severance damages;

c.     all goods, chattels, construction materials, furniture, furnishings, equipment, machinery, apparatus, appliances, and other items of personal property, whether tangible or intangible, of any kind, nature or description, whether now owned or hereafter acquired by Borrower, including, without limitation, lighting, heating, ventilating, air-conditioning, sprinkling and plumbing fixtures, fire prevention and extinguishing apparatus, water and power systems, engines and machinery, boilers, furnaces, oil burners, elevators and motors, dynamos, transformers, carpeting, floor coverings, floor coverings, draperies, shades, screens, curtains, blinds, window treatments, couches, sofas, stools, luggage racks, luggage carts, lamps, beds, mattresses, box springs, towels, linens, pillows, blankets, keys or other entry systems, chests, chairs, divans, chests, chiffonniers, and other furniture, all uniforms furnished to employees; all equipment and fixtures of every kind and nature used in connection with any food and beverage facilities including, but not limited to, all kitchen equipment, stoves, ranges, refrigerators, cutlery, dishes, tables, chairs, booths, bars, bar fixtures, bar equipment, mini-bars, liquor and other drink dispensers, icemakers, foodcarts, dining room wagons, flatware, chinaware, glassware, restaurant equipment, ice machines and entertainment equipment; all televisions, cable television equipment, intercom and paging equipment, electric and electronic equipment, dictating equipment, radios, cabling, telephones, private telephone systems, computer systems (hardware and software), communications systems, switchboards, conduits, call systems, cash registers, safes, office equipment, reservation systems and related software and hardware; all athletic, swimming pool and patio equipment and furniture; all lobby furniture and furnishings; all ground keeping, lawn sprinklers and lawn maintenance systems; all vehicles including courtesy vans and courtesy cars; all food stock, liquor, operating

supplies, food stuffs and inventory on hand or on order; all cleaning supplies and equipment; medical equipment; all laundry machines and equipment; dry cleaning facilities; all convenience items furnished to guests; all stationery, brochures, booklets, written materials and writing supplies furnished or madeavailable to guests or invitees, all art work, paintings, wall hangings, pictures, sculptures, statues, potted plants, and all other equipment and accouterments of any nature whatsoever used in operating the hotel on the Mortgaged Property and including, without limitation, any improvements including, without limitation, furnaces, steam boilers, incinerators, hot water boilers oil burners, pipes, radiators, air conditioning and sprinkling systems, gas and electric fixtures, carpets, rugs, shades, awnings, screens, elevators, motors, dynamos, cabinets, and all other furnishings, tools, equipment and machinery, appliances, building supplies, materials, contract rights, accounts receivable, management agreements, business records, fittings and fixtures of every kind, which is, are or shall hereafter be located upon, attached, affixed to or used or useful, either directly or indirectly, in connection with the complete and comfortable use, occupancy and operation of the Mortgaged Property, whether or not any of such personal property is now or becomes a Fixture (defined below), including, without limitation, any and all licenses, permits or franchises used or required in connection with such use, occupancy or operation, together with any and all additions, replacements or substitutions thereto, thereof or therefor, as well as the proceeds thereof or therefrom regardless of form (it being understood that the enumeration of any specific articles of property shall in no way be held to exclude any items of property not specifically enumerated), as well as renewals, replacements, proceeds, additions, accessories, increases, parts, fittings, insurance payments, awards and substitutes thereof, together with all interest of Borrower in any such items hereafter acquired, as well as Borrower's interest in any lease, or conditional sales agreement under which the same is acquired, all of which personal property mentioned herein shall be deemed fixtures and accessory to the freehold and a part of the realty and not severable in whole or in part without material injury to the Mortgaged Property) (hereinafter sometimes together referred to as the "Personal Property"; such Personal Property shall include, without limitation, all Accounts, Documents, Instruments, Chattel Paper, Goods, Equipment, General Intangibles, Fixtures and Inventory, as those terms are defined in the Uniform Commercial Code of the State where the Mortgaged Property is located);

d.     all plans and specifications, contracts and subcontracts for the construction of any improvements, density rights, bonds, permits and other development or use entitlements, licenses, franchise agreements, guarantees, warranties, causes of action, claims, condemnation proceeds, profits, security deposits, utility deposits, governmental agency fees and deposits and refunds thereof,

refunds of taxes or insurance premiums, policies, claims, and proceeds of insurance, claims and proceeds arising from condemnation, vehicles, together with all present and future attachments, accessions, replacements, additions, products and proceeds thereof;

e.      all monies deposited by Borrower, or deposited on behalf of Borrower, with any City, County, public body or agency, irrigation, sewer or water district or company, and any other body or agency, for the installation, or to secure the installation, of any utility pertaining to the Mortgaged Property;

f.      all refunds, rebates, reimbursements, reserves, deferred payments, deposits, cost savings, governmental subsidy payments, governmentally-registered credits (such as emissions reduction credits), other credits, waivers and payments, whether in cash or in kind, due from or payable by (i) any federal, state, municipal or other governmental or quasi-governmental agency, authority or district (each, a "Governmental Agency") or (ii) any insurance or utility company relating to any or all of the Mortgaged Property or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development or rehabilitation of the Mortgaged Property;

g.      all refunds, rebates, reimbursements, credits and payments of any kind due from or payable by any Governmental Agency for any taxes, special taxes, assessments, or similar governmental or quasi-governmental charges or levies imposed upon Borrower with respect to the Mortgaged Property or upon any or all of the Mortgaged Property or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development or rehabilitation of the Mortgaged Property;

h.      all monies deposited by Borrower with or for the benefit of Lender pursuant to any reserve, escrow or cash collateral agreements executed by Borrower in favor of Lender;

i.      contract rights, accounts receivable, management agreements, business records;

j.      all additions, accessions, replacements, substitutions, proceeds and products of the real and personal property, tangible and intangible, described herein; and

k.      all licenses, permits, approvals and consents which are required for the sale and service of alcoholic beverages on the Mortgaged Property heretofore or hereafter obtained from applicable state and local authorities.

3.      More than 30 days and less than 90 days prior to the commencement of this action,

Plaintiff personally served a written notice on Borrower describing the Real Property, the amounts due for principal, interest, taxes and insurance, reserves, and late charges for the Loan (as hereinafter described) and further stating that if the amounts due were not paid within 30 days, foreclosure proceedings would be commenced.

4.      On November 1, 2005, Borrower and other entities (the "Additional Borrowers"), borrowed the original principal amount of $7,155,000.00 together with interest thereon (the "Loan") from Artesia Mortgage Capital Corporation ("Original Lender") pursuant to that certain Loan Agreement dated as of November 1, 2005 and evidenced by that certain Fixed Rate Note dated as of November 1, 2005 in the original principal amount of $7,155,000.00 (the "Note").  Liability on the note was held jointly and severally among all the borrowers.

5.      To secure the repayment of the Loan, Borrower executed those certain: (a) Commercial Mortgage, Security Agreement, Fixture Filing Financing Statement and Assignment of Leases, Rents, Income and Profits dated November 1, 2005 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on November 15, 2005, at 3:00 p.m. and recorded as Docs. No. 645384 and 645386 (the "Mortgages"); and (b) Assignment of Leases, Rents, Income and Profits dated November 1, 2005 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on November 15, 2005, at 3:00 p.m. and recorded as Docs. No. 645385 and 645387 (the "Assignments of Leases").

6.      The Loan is further secured by certain UCC Financing Statements covering all personal property of Borrower, duly filed for record with the South Dakota Secretary of State on December 14, 2005, as Docs. No. 20053480810024 and  20053480810026.

7.      The Loan is additionally secured by certain real and personal property located in

North Dakota, Nebraska and Wisconsin, evidenced by four other mortgages and/or deeds of trust owned by the Additional Borrowers.

8.    Together, the Loan Agreement, the Note, the Mortgages, the Assignments of Leases, the UCC Financing Statement, and all other documents evidencing, securing or relating to the Loan are collectively referred to herein as the "Loan Documents."

9.    Original Lender executed that certain Allonge endorsing the Note to Wells Fargo Bank, N.A., as Trustee for the Registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 ("Initial Trustee").

10.    Original Lender assigned the Loan Documents to Initial Trustee pursuant to: (a) Assignment of Commercial Mortgage, Security Agreement, Fixture Filing Financing Statement and Assignment of Leases, Rents, Income and Profits dated November 16, 2005 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on June 11, 2007, at 9:00 a.m. and recorded as Doc. No. 663640; (b) Assignment of Assignment of Leases, Rents, Income and Profits dated November 16, 2005 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on June 11, 2007, at 9:00 a.m. as Doc. No. 663641; (c) Assignment of Commercial Mortgage, Security Agreement, Fixture Filing Financing Statement and Assignment of Leases, Rents, Income and Profits dated December 12, 2005 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on June 11, 2007, at 9:00 a.m. and recorded as Doc. No. 663642; and (d) Assignment of Assignment of Leases, Rents, Income and Profits dated December 12, 2005 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on June 11, 2007, at 9:00 a.m. as Doc. No. 663643.

11.    Initial Trustee filed certain UCC Financing Statement Amendments recorded on July 5, 2006 with the Secretary of State of South Dakota as Docs. No. 20061860810040 and 20061860810038.

12.    Initial Trustee executed that certain Allonge, endorsing the Note to Bank of America, N.A., as Trustee for the registered holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2005-C22 ("Subsequent Trustee").

13.    Initial Trustee assigned the Loan Documents to Subsequent Trustee pursuant to those certain Assignment of Commercial Mortgage, Security Agreement, Fixture Filing Financing Statement and Assignment of Leases, Rents, Income and Profits and Assignment of Assignment of Leases and Rents dated March 31, 2009 and duly filed for record in the office of the Recorder, within and for Grand Forks County, North Dakota, on August 10, 2009, at 9:00 a.m. and recorded as Docs. No. 689047 and 689048.

14.    Subsequent Trustee filed those certain UCC Financing Statement Amendment(s) recorded on July 27, 2009 with the Secretary of State of South Dakota as Docs. No. 20092081010030 and 20092081010032 and those certain UCC Financing Statement Amendment(s) recorded on June 29, 2010, with the Secretary of State of South Dakota as Doc. No. 201001801670126 and 20101801670129.

15.    Subsequent Trustee executed that certain Allonge, endorsing the Note to Plaintiff.

16.    Subsequent Trustee assigned the Loan Documents to Plaintiff pursuant to those certain Assignment(s) of Commercial Mortgage, Security Agreement, Fixture Filing Financing Statement and Assignment of Leases, Rents, Income and Profits and Assignment(s) of Assignment of Leases, Rents, Income and Profits dated May 12, 2011 and duly filed for record in the office of

the Recorder, within and for Grand Forks County, North Dakota, on May 19, 2011, at 10:00 a.m. and recorded as Docs. No. 707777 and 707778.

17. Subsequent Trustee filed those certain UCC Financing Statement Amendment(s) recorded on May 17, 2011, with the Secretary of State of South Dakota as Docs. No. 20111370910018 and 20111370910020.

18. Plaintiff is the holder of all right, title and interest in the Note, the Mortgage, the Assignment of Leases and the other Loan Documents.

19. Pursuant to the Loan Documents, Borrower promised to pay consecutive monthly installments of principal and interest.

20. Beginning with the monthly payment due in December 2009 and continuing through the present, Borrower failed to make the required monthly debt service payments.

21. Pursuant to the Loan Documents, as of March 29, 2012, the total amounts due and owing to Plaintiff from Borrower is itemized as follows:

| | |
|---|---|
| Unpaid Principal Balance: | $6,336,028.63 |
| Interest (as of March 29, 2012): | $872,697.82 |
| Late Fees: | $99,231.75 |
| Prepayment Premium / Yield Maintenance: | $1,161,991.14 |
| Lender costs, including for obtaining an appraisal, a title commitment, interest on advances and an environmental review: | $135,611.23 |
| Credit: Funds in Escrows and Reserves: | ($170,088.76) |
| Credit: Funds in Suspense: | ($415,449.34) |
| **Total:** | **$8,020,022.47** |

22.     The interest rate on the unpaid principal balance is 5.91% per annum, and the unpaid principal balance is accruing interest at a per diem rate of $1,040.16.

23.     The rights and interests of Borrower in the Mortgaged Property are subject, subordinate and inferior to the liens of Plaintiff as described herein.

24.     Borrower is in default under the Loan Documents.  Borrower is also in default under the Loan Documents for its filing of a voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

25.     Upon an event of default under the Loan Documents, Plaintiff has the right to foreclose on the Mortgaged Property.

26.     Plaintiff is entitled to the entry of judgment by default against Borrower.

27.     Plaintiff is entitled to entry of judgment of foreclosure and sale.

## ORDER FOR JUDGMENT

The Court having considered the evidence presented by Plaintiff, and having been fully advised upon all of the proceedings and pleadings herein, and after due consideration had, made and filed its Findings of Fact and Conclusions of Law.  Based upon those Findings of Fact and Conclusions of Law:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

A.     Plaintiff is entitled to Judgment against Borrower for the total sum of $8,020,022.47.

B.     The claims of Borrower be adjudged and decreed to be subsequent, inferior and junior to the lien of the Mortgaged Property;

C.     The amount adjudged to be due by Borrower in this action, together with interest

thereon, as detailed above, be adjudged to be a first, paramount and subsisting lien upon the Mortgaged Property;

D.      The Mortgage and the Assignment of Leases be foreclosed;

E.      A sale shall be made according to Chapter 28-23 of the North Dakota Century Code;

F.      Plaintiff or Borrower may become the purchaser of the Mortgaged Property at such sale;

G.      In the event that Plaintiff is a bidder and/or purchaser of the Mortgaged Property, Plaintiff may bid in lieu of cash and offset against the purchase price of the Mortgaged Property the amounts due to it under this Judgment and the order confirming the sale;

H.      The person appointed to hold the sale shall render and return to this Court a Return and Report of his/her proceedings thereunder and retain the amount of his/her costs, commissions and disbursements of the sale out of the proceeds and deliver to Plaintiff, or its attorneys, the remainder thereof to be applied upon the amount due on the Loan and as found due herein;

I.      If the proceeds of the sale of the Mortgaged Property are more than sufficient to pay the amount of the costs, commissions, and disbursements of the sale, together with the amount adjudged due and payable on the Loan, then the balance thereof be tendered and paid to the Clerk of the Court, subject to the further order of the Court;

J.      The Mortgaged Property be sold in one parcel;

K.      Upon the sale being made, the person appointed to hold the sale shall deliver to the purchaser a Certificate of Sale evidencing such purchase;

L.      The statutory period of redemption, as fixed by the laws of the State of North Dakota upon the sale of the Mortgaged Property, is 60 days after the sale;

M.      Upon the expiration of the period of redemption, Borrower and all persons claiming under, by or through it, will be forever debarred and foreclosed of all rights and equity of redemption in and to the Mortgaged Property and enjoined forever from asserting any claim thereto or to any part thereof;

N.      In case the Mortgaged Property shall not be redeemed prior to the expiration of the redemption period, then, upon the production of the Certificate of Sale by the legal owner and holder thereof to the person appointed to hold the sale, the person appointed to hold such sale shall make, execute and deliver good and sufficient deeds of conveyance of the Mortgaged Property to the legal owner and holder of such Certificates of Sale, after which the grantees or his/her/their legal representatives, successors or assigns, may take possession of the Mortgaged Property.

O.      A writ of special execution may be ordered in accordance with this judgment under N.D. Cent. Code § 28-21-04.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 11th day of May, 2012.

_____*/s/ Ralph R. Erickson*_____
Ralph R. Erickson, Chief Judge
United States District Court